UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

JACALYN ROBBINS,

          Plaintiff,

    v.

CITIMORTGAGE, INC.,

          Defendant.

Case No. 16-CV-04732-LHK

**ORDER RE: MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 102, 103

       Plaintiff Jacalyn Robbins ("Plaintiff") brings this action against Defendant CitiMortgage, Inc. ("Defendant"). Before the Court are Defendant's Motion for Summary Judgment, ECF No. 102 ("Citi Mot."), and Plaintiff's Motion for Summary Judgment, ECF No. 103 ("Robbins Mot."). Having considered the submissions of the parties, the relevant law, and the record in this case, the Court DENIES Plaintiff's Motion for Summary Judgment, and GRANTS in part and DENIES in part Defendant's motion for summary judgment.

I.     **BACKGROUND**

    A.     **Factual Background**

       On or about March 12, 2003, Plaintiff obtained a loan secured by a deed of trust on Plaintiff's property located in Aliso Viejo, California ("the mortgage"). ECF No. 102-1 at 6. The

mortgage was subsequently transferred to Defendant. ECF No. 103-12 at 5, Deposition of Jacalyn

Robbins ("Robbins Dep.") at 16:14–16. Plaintiff also had a home equity line of credit on the

property from a different lender, NuVision. ECF No. 109-4 at 5–6, Robbins Dep. at 27:23–28:2.

Plaintiff fell behind on her payments for both loans. ECF No. 109-4 at 6–8, Robbins Dep. at

28:15, 29:17–25, 30:7–18. Specifically, Plaintiff made a payment on the mortgage in December

2011, but did not make mortgage payments for January, February, March, or April 2012. ECF No.

109-4 at 8, Robbins Dep. at 30:7–18; ECF No. 106-1 at 37, Deposition of Natasha Stringer

("Stringer Dep.") at 35:4–10.

On or about April 12, 2012, Citi referred the Mortgage to its foreclosure counsel, Pite

Duncan LLP ("Pite Duncan"). ECF No. 106-1 at 37, Stringer Dep. at 35:11–17, 37:24–38:1. On or

about April 13, 2012, the Cal-Western Reconveyance Corporation sent Plaintiff a letter stating that

"CITIMORTGAGE, INC. has referred your loan to us for foreclosure. While the foreclosure

process has begun, you may still have foreclosure prevention alternatives available to you." ECF

No. 106-1 at 85 (copy of letter). On April 18, 2012, Plaintiff called Defendant and was advised

that the loan was in foreclosure. ECF No. 107 at 5 (record of call).

On May 15, 2012, Plaintiff sold the property and paid the mortgage in full. ECF No. 109-4

at 8, Robbins Dep. at 34:1–5. Defendant received full payment on May 22, 2012. ECF No. 106-1

at 37, Stringer Dep. at 35:4–10. However, the sale of Plaintiff's property was a short sale with

respect to NuVision. ECF No. 106-1 at 37, Stringer Dep. at 35:4–8. Significantly, Defendant at no

point filed a Notice of Default pursuant to California Civil Code § 2924 ("Section 2924"). ECF

No. 103-16 at 6 (admission in response to Plaintiff's interrogatory); ECF No. 109-4 at 37, Stringer

Dep. at 35:20-22 (Defendant's representative confirming no Notice of Default filed).

In August 2014, Robbins applied to refinance another mortgage and was told by her

mortgage broker that a foreclosure mention on Plaintiff's credit report would prevent her from

qualifying for a loan. ECF No. 106-1 at 14–15, Robbins Dep. at 65:23–66:7; ECF No. 103-2 at 2,

Declaration of Jacalyn Robbins ("Robbins Decl.") at ¶¶ 11–12.

Plaintiff subsequently disputed this report with Defendant and the three consumer

reporting agencies ("CRAs"), Equifax, Experian, and TransUnion. ECF No. 103-2 at 2, Robbins Decl. at ¶¶ 14–45.

Plaintiff submitted written disputes to Defendant on August 28, 2014, on November 7, 2014, on November 11, 2014, on December 20, 2014, on January 20, 2015, and on February 18, 2015. *Id.*; ECF Nos. 103-3 to 103-8 (copies of the disputes submitted to Defendant). Plaintiff also contacted Defendant telephonically on multiple occasions. ECF No. 103-12 at 12, Robbins Dep. at 69:21–23.

Plaintiff also disputed the reporting with the CRAs via certified mail sent to each one on or around April 23, 2015. ECF No. 103-2 at 2, Robbins Decl. at ¶¶ 33–44. The disputes state that "California Civil Code Section 2924 requires that the trustee file a Notice of Default at the County Recorder's Office in order to initiate foreclosure" and enclose a screenshot of the Orange County Recorder's Office[1] website showing that no Notice of Default was filed. ECF No. 103-2 at 2, Robbins Decl. at ¶ 45; ECF Nos. 103-9 to 103-11 (copies of the disputes submitted to CRAs); *see also* ECF No. 103-4 (February 18, 2015 dispute submitted directly to Defendant making same point). Plaintiff's CRA disputes contested the remarks "foreclosure initiated," "foreclosure started," "foreclosure proceedings started," and "account paid after foreclosure started." ECF Nos. 103-9 to 103-11. Plaintiff also disputed the payment rating and status, in essence how many days delinquent the loan was. *Id.*

The CRAs then filled out templated-based summaries of Plaintiff's disputes called Automated Credit Dispute Verifications ("ACDVs") and sent them to Defendant. Defendant then had 30 days to investigate Plaintiff's dispute, determine if it was valid, and fill out the response section of the ACDV with directions to the CRAs to either modify the disputed item, delete it, or leave the item unchanged. ECF No. 106-1 at 68, Expert Report of John Ulzheimer at 11 ("Ulzheimer Report"). Defendant furnishes information and fills out ACDVs according to the

---

[1] Aliso Viejo is located in Orange County, California. Thus, any Notice of Default would have to be filed with the Orange County Recorder's Office. Cal. Civ. Code § 2924(a)(1) (creditor shall file Notice of Default "in the office of the recorder of each county wherein the … property or some part or parcel thereof is situated").

Consumer Data Industry Association's ("CDIA") Credit Reporting Resource Guide, which is often referred to by the shorthand "Metro 2." ECF No. 106-1 at 70, Ulzheimer Report at 13. Defendant also instructs employees reviewing ACDVs that "[a]ll resources should be utilized to complete the research needed to make a final resolution." ECF No. 109-11 at 12 (instructions to employees).

Vishal Poojary, Hemang Makhecha, Vishal Rane, and an unknown employee handled the investigations on Defendant's behalf. ECF No. 103-22 (copies of ACDVs). On each occasion they ultimately verified Defendant's reporting by marking Metro 2 code 65 on the ACDVs. Specifically, the ACDVs stated "65: Account paid in full. A foreclosure was started." ECF No. 103-22 (copies of ACDVs). Defendant's senior employee Shelley Hess testified at her deposition that she was unaware of what steps were taken in the investigations. ECF No. 103-27 at 16–18, Deposition of Shelley Hess ("Hess Dep.") at 56:19–58:21.

### B.    Procedural History

On August 17, 2016, Plaintiff initiated the instant lawsuit by filing a two-count complaint naming CitiMortgage, TransUnion, Experian, and Equifax. ECF No. 1 ("Compl."). Count One alleged that Defendants violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq.* Compl. ¶¶ 63–66. Count Two alleged that Defendants violated the California Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code § 1785.1 *et seq.*

On March 8, 2017, the Court granted a stipulation to dismiss Defendant Transunion. ECF No. 70. On August 22, 2017, the Court granted a stipulation to dismiss Defendant Experian. ECF No. 91. On September 5, 2017, the Court granted a stipulation to dismiss Defendant Equifax. ECF No. 97.

On October 5, 2017, Plaintiff and Defendant filed cross-motions for summary judgment. Citi Mot.; Robbins Mot.[2] On October 19, 2017, Plaintiff and Defendant each filed oppositions to

---

[2] Defendant's summary judgment motion initially failed to redact Plaintiff's personal information in the attached exhibits. ECF No. 104. On October 8, 2017, Plaintiff requested the Court seal the exhibits and sanction Defendant. *Id.* On October 12, 2017, the Court sealed the exhibits, and ordered Defendant to file redacted versions, but denied sanctions because Defendant's conduct

the other party's motion for summary judgment. ECF No. 112 ("Citi Opp."); ECF No. 113 ("Robbins Opp."). On October 26, 2017, Plaintiff and Defendant filed their replies. ECF No. 114 ("Citi Reply"); ECF No. 115 ("Robbins Reply").

## II.    LEGAL STANDARD

### A.    Summary Judgment

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. However, on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The court is only concerned with disputes over material facts and "factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. It is not the task of the court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary

was inadvertent. ECF No. 108.

judgment. *Id.* If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323.

At the summary judgment stage, the court must view the evidence in the light most favorable to the nonmoving party: if evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999).

### III.  JUDICIAL NOTICE

The Court may take judicial notice of "a fact that is not subject to reasonable dispute" when the fact is either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Proper subjects of judicial notice include, for example, "court filings and other matters of public record." *Reyn's Pasta Bella, LLC v. Visa USA, Inc*., 442 F.3d 741, 746 n.6 (9th Cir. 2006).

Defendant requests judicial notice of two documents: (1) a Deed of Trust, dated March 12, 2003, and filed in the official records of Orange County on March 31, 2003, as document number 2003000348745; (2) Fannie Mae's Selling Guide, which is posted on Fannie Mae's website at https://www.fanniemae.com/content/guide/selling/b3/5.3/07.html. ECF No. 102-1.

The Court GRANTS Defendant's requests for judicial notice of these two documents. The Deed of Trust is properly the subject of judicial notice because it is a document published in the official public records of Orange County. It is therefore capable of accurate and ready determination from sources whose accuracy cannot reasonably be questioned. *See* Fed. R. Evid. 201(b). Accordingly, California district courts often take judicial notice of deeds of trust and other foreclosure-related documents. *See, e.g.*, *Gardner v. Am. Home Mortg. Servicing, Inc.*, 691 F. Supp. 2d 1192, 1196 (E.D. Cal. 2010) (taking judicial notice of a Notice of Default and Notice of Trustee's Sale); *Champlaie v. BAC Home Loans Servicing*, 706 F. Supp. 2d 1029, 1039 (E.D. Cal. 2009) (finding judicial notice of filed Notice of Default, Notice of Trustee's Sale, and Trustee's

Case No. 16-CV-04732-LHK
ORDER RE: MOTIONS FOR SUMMARY JUDGMENT

Deed Upon Sale proper); *Pantoja v. Countrywide Home Loans, Inc.*, 640 F. Supp. 2d 1177, 1192 n.12 (N.D. Cal. 2009) (taking judicial notice of the Deed of Trust).

The Court also takes judicial notice of the Selling Guide because it is published by a quasi-governmental entity and is a matter of public record that can be accurately and readily determined from sources, namely Fannie Mae, whose accuracy cannot reasonably be questioned. *See Certain Underwriters at Lloyd's v. Coastal States Mortg. Corp.*, 2014 WL 11380937,*4, n.5, n.6 (S.D. Fla. Apr. 18, 2014) (taking judicial notice of Fannie Mae's and Freddie Mac's publicly available servicing/seller guides).

## IV.    DISCUSSION

Plaintiff moves for summary judgment on Plaintiff's FCRA and CCRAA claims. Defendant moves for summary judgment on Plaintiff's FCRA and CCRAA claims, and the CCRAA affirmative defense of whether Defendant had reasonable investigative procedures in place. Defendant also moves for summary judgment on Defendant's claim that Plaintiff lacks any damages.

The Court first examines Plaintiff's FCRA claim, then Plaintiff's CCRAA claim, and then turns to Defendant's damages arguments. For the reasons set forth below, the Court finds that Plaintiff is not entitled to summary judgment on her FCRA claim because there is a material factual dispute as to whether Defendant conducted a reasonable investigation. The Court then finds that Plaintiff is not entitled to summary judgment on her CCRAA claim because there is a material factual dispute as to whether Plaintiff was harmed, and that Defendant is not entitled to summary judgment on its reasonable investigative procedures defense. Finally, the Court finds that Defendant is entitled to summary judgment on Plaintiff's claim to have suffered damages from a lost opportunity to obtain car financing and Plaintiff's claim to have suffered damages from a lost opportunity to purchase a property in Seattle, Washington. However, the Court finds that there is a material factual dispute as to Plaintiff's claim for punitive damages and Plaintiff's claim to have suffered damages based on her inability to refinance a mortgage and based on emotional distress.

7

## A. Fair Credit Reporting Act Claim

Congress enacted the FCRA "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1153 (9th Cir. 2009) (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007)). To ensure that credit reports are accurate, "the FCRA imposes some duties on the sources that provide credit information to CRAs, called 'furnishers' in the statute." *Id.* Certain obligations are triggered "upon notice of dispute," *i.e.* when a furnisher receives notice from a CRA that a consumer disputes the information the furnisher provided. *Id.* at 1154.

Specifically, 15 U.S.C. § 1681s-2(b)(1) of the FCRA provides that, after receiving a notice of dispute, the furnisher shall:

> (A) conduct an investigation with respect to the disputed information;
> (B) review all relevant information provided by the [CRA]. . .;
> (C) report the results of the investigation to the [CRA];
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other [CRAs] to which the person furnished the information . . .; and
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1) … (i) modify … (ii) delete … or (iii) permanently block the reporting of that item of information [to the CRAs].

§ 1681s-2(b)(1). "These duties arise only after the furnisher receives notice of dispute from a CRA; notice of a dispute received directly from the consumer does not trigger furnishers' duties under [§ 1681s-2(b)]." *Gorman*, 584 F.3d at 1154. However, if a furnisher's § 1681s-2(b) duties apply, the FCRA creates "a private right of action for willful or negligent noncompliance" with § 1681s-2(b)'s requirements. *Id.*

Plaintiff thus prevails on her § 1681s-2(b) claim if Plaintiff proves: (1) Defendant is a "furnisher"; (2) Plaintiff notified the CRA that Plaintiff disputed the reporting as inaccurate; (3) the CRA notified the furnisher of the alleged inaccurate information of the dispute; (4) the reporting was in fact inaccurate; and (5) Defendant failed to conduct the investigation required by § 1681s-2(b)(1). *See Biggs v. Experian Info. Solutions, Inc.*, 209 F. Supp. 3d 1142, 1144 (N.D. Cal. 2016); *see also Hughes v. IQ Data Int'l, Inc.*, 2016 WL 7406993, at *2 (N.D. Cal. Dec. 22, 2016); *Gorman*, 584 F.3d at 1153–55 (overview of FCRA claims against furnishers).

8

The Court examines each of the five elements of Plaintiff's § 1681s-2(b) claim in turn and then concludes that Plaintiff is not entitled to summary judgment on her FCRA claim because there is a genuine dispute of material fact as to whether Defendant conducted a reasonable investigation.

### 1.    Defendant is a "Furnisher"

As to the first element, Plaintiff served a Request for Admission ("RFA") on Defendant that asked Defendant to "[a]dmit that Defendant is a 'furnisher of information' as that term is described in the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2." ECF No. 103-14 at 3; *see also id* (admitting that Defendant is a "person" under 15 U.S.C. § 1681a). Defendant admitted this, so the Court finds that no there is dispute of material fact regarding whether Defendant is a furnisher. *See Celotex*, 477 U.S. at 323–25.

### 2.    Plaintiff Notified the CRAs that Plaintiff Disputed the Reporting as Inaccurate

As to the second element, Plaintiff served a RFA on Defendant that asked Defendant to "[a]dmit that Defendant was notified by Trans Union that Plaintiff had disputed information about the Account[s] with Trans Union." ECF No. 103-14 at 5, 6 (same question for Experian), 7 (same question for Equifax). Defendant answered "[a]dmitted" to all three inquiries. *Id.* Furthermore, both parties' motions for summary judgment attach copies of the letters Plaintiff sent to the CRAs as exhibits. ECF Nos. 103-9 to 103-11 (Plaintiff's exhibits); ECF No. 106-1 at 80–82 (Defendant's exhibits). The Court thus finds that there is no dispute of material fact as to whether Plaintiff notified the CRAs that Plaintiff disputed the reporting as inaccurate.

### 3.    The CRAs Notified Defendant About Plaintiff's Dispute

As to the third element, Defendant's admission that it was notified by the CRAs about Plaintiff's dispute establishes that the CRAs informed Defendant about Plaintiff's dispute. ECF No. 103-14 at 5–7 (admitting that "Defendant was notified by [CRAs] that Plaintiff had disputed" Defendant's reporting). Underscoring the point, both parties' motions for summary judgment include copies of the ACDVs that Defendant prepared as a direct response to the CRAs'

United States District Court
Northern District of California

notifications about Plaintiff's dispute. ECF Nos. 103-21 to 103-24 (Plaintiff's copies); ECF No.

107 at 33–41 (Defendant's copies). The Court thus finds that there is no dispute of material fact as

to whether the CRAs notified Defendant about Plaintiff's dispute.

### 4. Defendant's Reporting Was Inaccurate

As to the fourth element, FCRA plaintiffs must prove that the furnisher reported inaccurate

information to prevail on a § 1681s-2(b) claim. *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d

876, 890 (9th Cir. 2010); *Biggs*, 209 F. Supp. 3d at 1144; *Gorman*, 584 F.3d at 1163–64. An item

on a credit report can be inaccurate "because it is patently incorrect, or because it is misleading in

such a way and to such an extent that it can be expected to adversely affect credit decisions."

*Carvalho*, 629 F.3d at 890 (citation omitted).

The parties agree that even after completing an investigation prompted by Plaintiff's

disputes with the CRAs, Defendant never filed a Notice of Default, and Defendant continued to

report that the foreclosure process was initiated. ECF No. 103-16 at 6 (Defendant's admission it

did not file a Notice of Default); ECF No. 103-22 (copies of ACDVs reiterating that the

foreclosure process was initiated). The parties vigorously disagree over whether these facts render

Defendant's reporting inaccurate. Plaintiff maintains that California law determines when the

foreclosure process is initiated, and thus that Defendant's reporting was inaccurate because

California law holds that filing a Notice of Default initiates the foreclosure process. Defendant

insists that California law does not define when the foreclosure process is initiated for FCRA

purposes. Defendant argues instead that its internal definition of when the foreclosure process is

initiated should control, and in particular that the foreclosure process is initiated when Defendant

refers the foreclosure to its foreclosure counsel. ECF No. 106-1 at 36, Stringer Dep. at 21:4–5

("Citi takes foreclosure being started upon the referral to our foreclosure counsel."). In the

alternative, Defendant argues that California law permits things other than filing a Notice of

Default to initiate a foreclosure, and Defendant argues from this that Defendant's referral of a

mortgage to Defendant's foreclosure counsel suffices to initiate the foreclosure process under

California law.

United States District Court
Northern District of California

The Court need not reach whether California law permits something other than filing a Notice of Default to initiate the foreclosure process. This is because even assuming that California law permits something other than filing a Notice of Default to initiate the foreclosure process, California law would not find that Defendant initiated the foreclosure process simply by referring Plaintiff's mortgage to Defendant's foreclosure counsel.

### a. Initiating a Foreclosure California Law

California law sets out detailed instructions for completing a nonjudicial foreclosure, the type of foreclosure at issue here. *Yvanova v. New Century Mortg. Corp.*, 365 P.3d 845, 849–51 (Cal. 2016).[3] In particular, Section 2924(a) sets out a list of six requirements that a creditor must satisfy before it can complete a foreclosure sale. *Shahani v. United Commercial Bank*, 457 B.R. 775, 788 (N.D. Cal. 2011). Two of those requirements are particularly important here, so the Court excerpts them in full:

> (1) The trustee, mortgagee, or beneficiary, or any of their authorized agents *shall first file for record*, in the office of the recorder of each county wherein the mortgaged or trust property or some part or parcel thereof is situated, *a notice of default*. That notice of default shall include all of the following:
> …
> (6) No entity *shall record or cause a notice of default to be recorded or otherwise initiate the foreclosure process* unless it is the holder of the beneficial interest under the mortgage or deed of trust, the original trustee or the substituted trustee under the deed of trust, or the designated agent of the holder of the beneficial interest. No agent of the holder of the beneficial interest under the mortgage or deed of trust, original trustee or substituted trustee under the deed of trust may *record a notice of default or otherwise commence the foreclosure process* except when acting within the scope of authority designated by the holder of the beneficial interest.

Cal. Civ. Code § 2924(a)(1), (6) (emphases added).

Plaintiff and Defendant offer significantly different interpretations of Section 2924. Plaintiff points to the text of Section 2924(a)(1) and case law to argue that Section 2924 requires filing a Notice of Default to initiate the foreclosure process.

Specifically, Section 2924(a)(1) requires that the lender "shall first file for record … a

---

[3] All future references to foreclosures and the foreclosure process refer to the nonjudicial foreclosure process unless otherwise noted.

Case No. 16-CV-04732-LHK
ORDER RE: MOTIONS FOR SUMMARY JUDGMENT

notice of default." Cal. Civ. Code § 2924(a)(1). Section 2924(a)(1) identifies no other recordation, filing, or action that can replace the filing of a Notice of Default in initiating the foreclosure process. Underscoring the point, Section 2924(a)(2) prohibits a nonjudicial foreclosure sale until "[n]ot less than three months elapse from the filing of the notice of default." The fact that Section 2924(a)(2) determines this mandatory waiting period based on the filing of the Notice of Default again suggests that Section 2924(a) envisions a Notice of Default initiating the foreclosure process. Furthermore, even the subsequent requirement that lenders file "notice of sale" relies on the initial Notice of Default to start the foreclosure process because "the date of sale … [can be] no earlier than three months and 20 days *after the recording of the notice of default*." Civ. Code § 2924(a)(3) (emphasis added).

Moreover, Section 2924(a)(1) states that the "notice of default shall include all of the following" and then lists specific requirements for the contents of the Notice of Default that center on notifying a mortgagor of the impending foreclosure. Cal. Civ. Code § 2924(a)(1)(A)–(D) (requiring a statement identifying the mortgage and mortgagors, notice that breach of obligations has occurred, a statement setting forth the nature of the breach and the lender's decision to foreclose, and additional language if the default is curable). By its terms, Section 2924(a)(1) only applies these requirements to a Notice of Default—the statute nowhere mentions what if any requirements might apply to an alternative means of initiating the foreclosure process.

Both federal and state case law uniformly supports Plaintiff's position that filing a Notice of Default initiates a foreclosure. *See, e.g., Ho v. ReconTrust Co., NA*, 858 F.3d 568, 570 (9th Cir. 2016) (describing filing Notice of Default as "first step" in foreclosure process); *Calderon v. Wolf Firm*, 2017 WL 253969, at *3 (C.D. Cal. Jan. 18, 2017) ("In California, the foreclosure process begins when the [creditor] … files for record with the county recorder a notice of default."); *Yvanova*, 365 P.3d at 850 ("The trustee starts the nonjudicial foreclosure process by recording a notice of default and election to sell."); *Kachlon v. Markowitz*, 85 Cal. Rptr. 3d 532, 546 (Ct. App. 2008) ("Generally speaking, the statutory, nonjudicial foreclosure procedure begins with the recording of a notice of default by the trustee."); *Moeller v. Lien*, 30 Cal. Rptr. 2d 777, 782 (Ct.

App. 1994) ("The foreclosure process is commenced by the recording of a Notice of Default and Election to Sell by the trustee.").

Defendant replies that Plaintiff's cases are irrelevant because the cases do not discuss why a Notice of Default initiates the foreclosure process. However, Defendant ignores the fact that the cases analyze Section 2924(a). Indeed, Defendant has not cited a single case that interprets Section 2924(a)(6) to allow something other than a Notice of Default to initiate the foreclosure process, much less to a case holding that a lender initiates the foreclosure process by referring a mortgage to its foreclosure counsel.

On the other hand, Defendant maintains that Section 2924 does not require a Notice of Default to initiate the foreclosure process and relies principally on the "otherwise initiate the foreclosure process" language of Section 2924(a)(6). Defendant argues that its referral of Plaintiff's mortgage to Defendant's foreclosure counsel falls within the "otherwise initiate the foreclosure process" language of Section 2924(a)(6). The Court finds that the text of Section 2924(a)(6) indicates that something other than the filing of a Notice of Default can initiate the foreclosure process. Even so, Defendant's referral of Plaintiff's mortgage to Defendant's foreclosure counsel does not fall within the "otherwise initiate the foreclosure process" language of Section 2924(a)(6) for the reasons below.

First, Defendant's referral of a mortgage to its foreclosure counsel does not provide a method for anyone other than Defendant to know whether the foreclosure process has been initiated. That is inconsistent with Section 2924's emphasis on notifying debtors of foreclosure proceedings so that they can attempt to cure the default. *Sys. Inv. Corp. v. Union Bank*, 21 Cal. App. 3d 137, 153 (Ct. App. 1971) ("A purpose of the required statement in the notice of default is to afford the debtor an opportunity to cure the default and obtain reinstatement of the obligation within three months after the notice of default."); *Shahani*, 457 B.R. at 788 ("Before a secured creditor may sell collateral after a debtor defaults, it must satisfy certain statutory requirements, including sending the debtor a Notice of Default that alerts the debtor to the nature of the default."); *Knapp v. Doherty*, 123 Cal. App. 4th 76, 99 (2004) ("One of the signal purposes of the

Case No. 16-CV-04732-LHK
ORDER RE: MOTIONS FOR SUMMARY JUDGMENT

notice of default is to advise the trustor of the amount required to cure the default.").

Second, Defendant's position is at odds with the principle that courts interpret statutes consistent with the statute's legislative history and purpose. *Garcia v. PacifiCare of California, Inc.*, 750 F.3d 1113, 1116 (9th Cir. 2014). Section 2924 "is part of a comprehensive scheme designed to protect debtors from abusive practices that had been associated with powers of sale in deeds of trust" that has been in place since 1917. *Homestead Sav. v. Darmiento*, 281 Cal. Rptr. 367, 371–72 (Ct. App. 1991). Thus, California courts have insisted that Section 2924's "statutory requirements [for sale of collateral] must be strictly complied with … ." *Shahani*, 457 B.R. at 788 (quoting *Miller v. Cote*, 179 Cal. Rptr. 753, 756–57 (Ct. App. 1982)). Defendant's position effectively allows lenders to initiate the foreclosure process however they see fit. This may result in widespread arbitrariness and inconsistency that could result in abusive practices that are at odds with the statute's purpose and history.

Moreover, Defendant's position would risk rendering Section 2924(a)'s language requiring the filing of a Notice of Default to initiate the foreclosure process surplusage. Lenders may opt out of filing a Notice of Default when the lender can satisfy Section 2924(a)(6)'s "otherwise commence the foreclosure process" by simply contacting foreclosure counsel.

In sum, the Court need not decide whether Section 2924(a) permits things other than filing a Notice of Default to initiate the foreclosure process. However, the Court finds that even if Section 2924(a) does permit things other than filing a Notice of Default to initiate the foreclosure process, Defendant simply referring a mortgage to its foreclosure counsel is not enough to satisfy the statute.

### b.       Defendant Was Not Entitled to Rely On Its Own Definition

Defendant maintains that even if Section 2924 does not permit Defendant to initiate a foreclosure solely by referring a mortgage to Defendant's foreclosure counsel, Section 2924's definition of what initiates the foreclosure process is irrelevant for FCRA purposes. Instead, Defendant argues that the relevant standard for FCRA purposes is a lender's internal understanding of what initiates the foreclosure process.

14

Defendant cites in support the Metro 2 guidelines to which Defendant adheres, and Defendant's representative's statement that "Citi takes foreclosure being started upon the referral to our foreclosure counsel." ECF No. 106-1 at 36, Stringer Dep. at 21:4–5; *see* Fed. R. Civ. P. 30(b)(6) (allowing organizations to designate individuals to be deposed on their behalf). Plaintiff does not dispute Defendant's adherence to Metro 2 or that Defendant views the foreclosure process as initiating when Defendant refers the mortgage to Defendant's foreclosure counsel. Even so, Defendant's evidence fails to establish a material factual dispute.

Metro 2 is a "standardized reporting format published by the Consumer Data Industry Association." *Bilderback v. Ocwen Loan Servicing, LLC*, 2017 WL 4079262, at *4 (D. Nev. Sept. 14, 2017). Defendant's theory is that because its reporting comported with Metro 2, its reporting was accurate. *See* Citi Opp. at 6. The Court disagrees. Metro 2 guidelines do not establish the standards for accuracy under the FCRA, so Defendant's argument that its reporting did not "deviate[] from guidelines set by the Consumer Data Industry Association is beside the point, as these guidelines do not establish the standards for accuracy under the FCRA." *Hupfauer v. Citibank, N.A.*, 2016 WL 4506798, at *4 n.5 (N.D. Ill. Aug. 19, 2016). Similarly, a number of cases in this district have rejected plaintiffs' claims that creditors' objectively accurate credit reporting is rendered inaccurate under the FCRA because the reporting does not comply with industry standards. *Devincenzi v. Experian Info. Sols., Inc.*, 2017 WL 86131, at *6 (N.D. Cal. Jan. 10, 2017) (listing cases). Now that the shoe is on the other foot, Defendant cannot claim that complying with industry standards transforms inaccurate reporting into accurate reporting.

More broadly, Defendant's position boils down to asserting that the foreclosure process is initiated when lenders contact foreclosure counsel. The Metro 2 guidelines do not mention a Notice of Default, and the industry's practice is to let a furnisher decide if a particular credit reporting code is appropriate when guidelines are silent. ECF No. 106-1 at 69–70, Ulzheimer Report at 12–13; ECF No. 106-1 at 55, Deposition of John Ulzheimer ("Ulzheimer Dep.") at 63:13–16. Defendant infers from this that its reporting was accurate because Metro 2 left the decision about what reporting code to use to Defendant's discretion. The Court is not persuaded. If

15

anything, the absence of a Metro 2 definition makes ignoring Section 2924's definition less defensible because Defendant lacked any other objective definition of when the foreclosure process is initiated.

The Court also rejects Defendant's position because the Metro 2 guidelines lack an objective standard. The Metro 2 guidelines are nonbinding, so Defendant argues that the Metro 2 guidelines leave lenders free to define foreclosure initiation however they see fit, and thus that lenders are not bound to adhere to any objective standard. Underscoring the point, even Defendant's designated representative could not identify any written policy defining when a foreclosure began. ECF No. 106-1, Stringer Dep. at 21:10–20 ("Q. … is there like a manual or a document that you refer to or reviewed to answer when a foreclosure starts on behalf of Citi? A. No, there's not a specific manual regarding it.") That level of subjectivity is a recipe for inconsistency and inaccuracy because it lets each lender choose its own definition and provides no way to ensure they even apply it consistently. That outcome is incompatible with a statute that seeks "to ensure fair and accurate credit reporting … ." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007).

Defendant's remaining arguments are less clear. Defendant contends that its reporting was not inaccurate because potential creditors will always consider defaulting consumers less creditworthy than those who pay, so whether or not a Notice of Default was filed is immaterial. Citi Mot. at 7. There are two ways to construe this cryptic argument. Defendant might be claiming a Notice of Default is immaterial because Defendant's *reporting* that the foreclosure process was initiated is what hurt Plaintiff's credit. That theory misses the mark. Nobody disputes that Defendant's reporting—and not the presence or absence of a Notice of Default—is what hurt Plaintiff's credit. The question is whether or not Defendant's reporting was *accurate* under the FCRA in the absence of a Notice of Default.

Alternatively, Defendant might be claiming that reporting that the foreclosure process was initiated is immaterial because a debtor's failure to pay is what scares off potential lenders, not the debtor's foreclosure status. That theory is inaccurate. During the deposition of Plaintiff's mortgage

16

broker, he expressly stated that foreclosure reporting was the reason he could not proceed with Plaintiff's refinancing, and that if Defendant had not reported a foreclosure initiation, he would have proceeded with the refinancing. ECF No. 113-1 at 2, Declaration of Brad Ludes ("Ludes Decl.") at ¶¶ 8–12. Plaintiff has therefore presented undisputed evidence that reporting the foreclosure initiation harmed her. *See* ECF No. 102-3 at 99 (copy of evaluation of Plaintiff's application for loan refinancing noting that her loan is ineligible for refinancing because of a foreclosure).

In sum, Plaintiff has established that Defendant provided information that was inaccurate under the FCRA because it was "patently incorrect." *Carvalho*, 629 F.3d at 890. The Court now turns to the final part of Plaintiff's FCRA claim, whether Defendant conducted a reasonable investigation.

### 5.      Neither Party Is Entitled to Summary Judgment on the Reasonable Investigation Requirement

As for the fifth and final element, the FCRA requires that furnishers conduct a "reasonable" investigation when they receive notice of a dispute from a CRA. *Drew v. Equifax Info. Servs., LLC*, 690 F.3d 1100, 1110 (9th Cir. 2012) (citation omitted). A reasonable investigation is "an inquiry likely to turn up information about the underlying facts and positions of the parties, not a cursory or sloppy review of the dispute." *Gorman*, 584 F.3d at 1161. Still, a furnisher's investigation "is not necessarily unreasonable because it results in a … conclusion [that] turns out to be inaccurate." *Drew*, 690 F.3d at 1110 (citation omitted). The FCRA imposes liability "not for an investigation that produces incorrect results, but for an unreasonable investigation." *Id.* A furnisher's failure to consult sources beyond its internal records during an investigation can render the investigation unreasonable. *See Dennis v. BEH-1, LLC*, 520 F.3d 1066, 1070 (9th Cir. 2008) (holding furnisher's failure to review court filings available for free online a negligent violation of FCRA); *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 431 (4th Cir. 2004) (holding a jury could find that a furnisher's failure to look beyond internal information constituted an unreasonable investigation).

17

1    Both sides move for summary judgment on whether Defendant's investigation was

2 reasonable. Defendant argues that its investigation was reasonable and presents as evidence the

3 ACDVs it completed in response to Plaintiff's CRA disputes as well as its written instruction to

4 employees completing ACDV investigations that "[a]ll resources should be utilized to complete

5 the research needed to make a final resolution." ECF No. 107 at 11, 33–41.

6    Plaintiff argues that Defendant's investigation was unreasonable because it failed to

7 consult the website of the Orange County Recorder's Office despite being notified that California

8 law required filing a Notice of Default and that no Notice of Default had been filed. Plaintiff's

9 evidence consists of Plaintiff's written letters to the CRAs and Defendant that disputed the

10 accuracy of Defendant's reporting and stated that a Notice of Default was required to initiate the

11 foreclosure process under California law; deposition testimony from Shelley Hess (one of

12 Defendant's senior employees) and Kellie Harding (Defendant's employee who reviewed

13 Plaintiff's file) that suggests Defendant's employees only use internal records when reviewing

14 consumers' disputes; communications with Defendant's foreclosure counsel indicating some

15 confusion as to whether a Notice of Default was filed; and deposition testimony from Hess

16 indicating Defendant does not know what investigative steps were taken during the review of

17 Plaintiff's dispute. ECF No. 103-9 to 11 (CRA disputes); ECF No. 103-27 at 7, Hess Dep. at 20:9–

18 15 (internal records testimony); ECF No. 103-29 at 6, Harding Dep. at 33:8–10 (internal records

19 testimony); ECF Nos. 113-3 to 113-4 (communications with foreclosure counsel about Notice of

20 Default); ECF No. 103-27 at 16–18, Hess Dep. 56:19–58:21 (ignorance of investigation).

21    The Court finds that there is a material factual dispute as to the reasonableness of

22 Defendant's investigation. The Court first considers Defendant's evidence, and then turns to

23 Plaintiff's.

24 **a.**    **Defendant's Evidence**

25    Defendant argues that it is entitled to summary because the ACDVs and "all resources"

26 instruction to Defendant's employees establish that there is no genuine dispute of material fact as

27 to the reasonableness of Defendant's investigation.

28

United States District Court
Northern District of California

Defendant's ACDVs demonstrate that an investigation took place, but they reveal almost nothing about what happened during the investigation and they do not say what resources were consulted. The ACDVs thus have little bearing on whether Defendant's investigation was reasonable.

Nor does Defendant's "all resources" instruction to employees make much difference. The instruction comes from a "Procedure Manual" that tells Defendant's employees how to process ACDVs. ECF No. 107 at 9. Step 7 of that process is "Review and validate the appropriate fields depending upon the dispute by the consumer. All resources should be utilized to complete the research needed to make a final resolution." *Id.* at 11. That sounds expansive, but the very next sentence states "Resources include:" and then provides a list of resources that are almost exclusively internal to Defendant (*e.g.* "CitiLink," "CitiFind"). *Id.* Indeed, the only truly independent source on the list is the Public Access to Court Electronic Records ("PACER"), a database of federal court records. *Id.* The list is also conspicuously bereft of any source of state court records or, significantly, the records of the county recorder.

Moreover, the depositions of Hess and Harding both suggest that ACDV reviews only consult internal sources and thus that Defendant did not visit the Orange County Recorder's Office to determine if a Notice of Default had been filed. ECF No. 103-27 at 7, Hess Dep. at 20:9–15 (internal records testimony); ECF No. 103-29 at 6, Harding Dep. at 33:8–10 (internal records testimony).

In sum, Defendant's evidence is insufficient to prevail on summary judgment as to the reasonableness of Defendant's investigation.

### b. Plaintiff's Evidence

Plaintiff argues that it was unreasonable for Defendant to not consult the website of the Orange County Recorder's Office when her disputes claimed that a Notice of Default was required to initiate the foreclosure process and told Defendant that no Notice of Default had been filed. *See Dennis v. BEH-1, LLC*, 520 F.3d 1066, 1070 (9th Cir. 2008) (holding furnisher's failure to review court filings available for free online a negligent violation of FCRA); *Johnson v. MBNA Am.*

Case No. 16-CV-04732-LHK
ORDER RE: MOTIONS FOR SUMMARY JUDGMENT

*Bank, NA*, 357 F.3d 426, 431 (4th Cir. 2004) (holding a jury could find that a furnisher's failure to look beyond internal information constituted an unreasonable investigation). Even assuming that Defendant's investigation was unreasonable if it did not consult the website of the Orange County Recorder's Office, Plaintiff is not entitled to summary judgment because there remains a genuine dispute of material fact as to whether Defendant consulted the website.

Plaintiff's CRA disputes state that "California Civil Code Section 2924 requires that the trustee file a Notice of Default at the County Recorder's Office in order to initiate the foreclosure process. Enclosed with this letter is a search from the Orange County Recorder Office website that shows no notice of default was ever filed in my name during the life of this loan." ECF Nos. 103-9 to 103-11. This, to say nothing of Plaintiffs' repeated efforts to contact Defendant directly, apprised Defendant of the substance of Plaintiff's dispute. ECF Nos. 103-3 to 103-8 (copies of Plaintiff's disputes submitted to Defendant); ECF No. 103-12 at 12, Robbins Dep. at 69:21–23 (testifying that Plaintiff contacted Defendant telephonically). That suggests Defendant's failure to correct its reporting after its investigation was unreasonable.

Deposition testimony from Kellie Harding, an employee of Defendant who reviewed Plaintiff's file, also suggests that Defendant's failure to correct its reporting was unreasonable. Harding is an employee of Defendant who conducted an investigation in response to a dispute Plaintiff submitted directly to Defendant. As Plaintiff admits, Harding's investigation cannot be the basis for Defendant's FCRA liability because a furnisher's § 1681s-2(b) obligations "arise only after the furnisher receives notice of dispute from a CRA; notice of a dispute received directly from the consumer does not trigger furnishers' duties under [§ 1681s-2(b)]." *Gorman*, 584 F.3d at 1154. Still, Harding's testimony indirectly suggests that the investigations at issue here did not consult outside sources because Harding testified her investigation consisted of "Review[ing] the account, prior history, prior CBR information that was available to me on Citilink." ECF No. 103-29 at 6, Harding Dep. at 33:8–10. That suggests Defendant's investigation unreasonably failed to consult outside sources. The inference of unreasonableness is even stronger because Plaintiff identifies internal records that suggest some confusion about whether a Notice of Default

United States District Court
Northern District of California

was filed. ECF Nos. 113-3 to 113-4.

Deposition testimony from Shelley Hess, one of Defendant's senior employees, suggests Harding's failure to consult outside resources is company policy. That adds still further weight to the inference that the investigations underlying Plaintiff's FCRA complaint also failed to do so. Hess described Defendant's employees' procedures in reviewing a dispute as follows: "You would review the system, our system of record. You would review any images in our imaging system. You would review any past cases. That's pretty — pretty much all you would review. It's standardized." ECF No. 103-27 at 7, Hess Dep. at 20:11–15.

Nonetheless, Plaintiff's final piece of evidence underscores why Plaintiff is not entitled to summary judgment on this issue. During Hess's deposition, Hess was asked "[w]ith regard to this particular matter, do you know what was reviewed in response to Ms. Robbins' disputes?" ECF No. 103-27 at 7, Hess Dep. at 20:17–19. Hess replied "no." ECF No. 103-27 at 7, Hess Dep. at 20:20. Hess also professed ignorance as to what steps the employees who investigated Plaintiff's case actually took. ECF No. 103-27 at 16–18, Hess Dep. at 56:19–58:21. So did Defendant's expert, John Ulzheimer. ECF No. 103-26 at 10–11, 13 Ulzheimer Dep. at 38:27–39:8, 41:23–25.

Based on this, Plaintiff asks the Court to grant summary judgment on the ground that Defendant cannot establish that Defendant conducted a reasonable investigation. Yet that request incorrectly shifts the burden of proof. Defendant does not have to prove that its investigation was reasonable. Plaintiff instead must prove that Defendant's investigation was *unreasonable* to be entitled to summary judgment.

Plaintiff has not done so. Plaintiff has presented evidence that persuasively suggests Defendant was informed about the Notice of Default issue, that Defendant likely has a policy of only reviewing internal sources in response to credit reporting disputes, and that Defendant is ignorant of what specific steps were taken in the investigations that gave rise to this lawsuit. Nevertheless, the Court has almost no information about what *actually* happened during this investigation, and in particular whether Defendant's employees verified whether a Notice of Default was filed via the Orange County Recorder's Office's website. Defendant can also point to

evidence suggesting that a reasonable investigation was undertaken, including an internal document that instructs employees that "all resources" should be used to resolve disputes, and the list of resources following the all resources statement, which includes an independent database of federal court proceedings.

### 6.    Conclusion

To sum up, Plaintiff prevails on her FCRA claim if she proves (1) that Defendant is a furnisher under the FCRA, (2) that Plaintiff notified a CRA that she disputed Defendant's credit reporting as inaccurate, (3) that the CRA notified Defendant about Plaintiff's dispute, (4) that Defendant's information was inaccurate, and (5) that Defendant failed to conduct a reasonable investigation. *Biggs*, 209 F. Supp. at 1144; *see also Hughes*, 2016 WL 7406993, at *2; *Gorman*, 584 F.3d at 1153–55.

The Court finds that Plaintiff has established that there is no genuine dispute of material fact as to (1) to (4) above, but DENIES Plaintiff summary judgment on her FCRA claim because the Court finds that there is a genuine dispute of material fact as to (5), whether Defendant conducted a reasonable investigation. For the same reasons, the Court DENIES Defendant summary judgment on Plaintiff's FCRA claim. The Court now turns to Plaintiff's CCRRA claim.

### B.    California Consumer Credit Reporting Agencies Act

Much like the FCRA, the CCRAA was enacted because of a need to "insure that consumer credit reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." Cal. Civ. Code § 1785.1(c). The CCRA's purpose is thus "to require that consumer credit reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit … and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information[.]" *Id.* § 1785.1(d).

The CCRAA provides that "a person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate." Cal. Civ. Code § 1785.25(a). "Unlike the [FCRA], the

Case No. 16-CV-04732-LHK
ORDER RE: MOTIONS FOR SUMMARY JUDGMENT

[CCRA] does not require that an agency notify the furnisher about disputed reports before a consumer gains a private right of action." *Reagan v. Am. Home Mortg. Servicing Inc.*, 2011 WL 2149100, at *3 (N.D. Cal. May 31, 2011). Instead, "a plaintiff must show that the [furnisher] … knew or should have known that the information given to the agency was incomplete or inaccurate, and the plaintiff must be harmed as a result of that inaccurate report." *Id.*

Still, even an otherwise successful CCRAA claim fails if the furnisher is covered by the CCRAA's safe harbor provision. The safe harbor provision protects a furnisher from liability for violating § 1785.25 if "the furnisher establishes by a preponderance of the evidence that, at the time of the failure to comply with [§ 1785.25], the furnisher maintained reasonable procedures to comply with [§ 1785.25]." Cal. Civ. Code § 1785.25(g).

In sum, to prevail on a CCRAA claim Plaintiff must prove that (1) Defendant is a "person" under the CCRAA, (2) Defendant reported information to a CRA, (3) the information reported was inaccurate, (4) Plaintiff was harmed, and (5) Defendant knew or should have known the information was inaccurate. However, even if Plaintiff proves these five elements, Defendant is not liable if Defendant establishes that Defendant maintained reasonable procedures to comply with § 1785.25.

The parties do not dispute that Defendant is a person, and that Defendant reported information to a CRA. However, the parties do dispute whether the information was inaccurate, whether Plaintiff was harmed, and whether Defendant knew or should have known the information was inaccurate.

The Court finds that the only genuine dispute of material fact in Plaintiff's CCRAA claim concerns whether Plaintiff was harmed. The Court also finds that there is a genuine dispute of material fact as to whether Defendant had reasonable procedures in place.

### 1. Defendant is a "Person"

As to the first element, California Civil Code § 1785.3(j) defines a person as "any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity." Defendant's answer to Plaintiff's complaint

Case No. 16-CV-04732-LHK
ORDER RE: MOTIONS FOR SUMMARY JUDGMENT

"admits that it is a corporation incorporated in the State of New York." ECF No. 33 at 3 ("Answer"). Thus, the Court finds that there is no dispute of material fact regarding whether Defendant is a person.

### 2.    Defendant Reported Information to a CRA

As to the second element, Defendant's answer likewise admits that "it furnishes information to consumer reporting agencies about consumer transactions," a reality its ACDVs further underscore. Answer at 3. The Court therefore finds that there is no dispute of material fact as to whether Defendant reported information to a CRA. *See Celotex*, 477 U.S. at 323–25.

### 3.    Defendant Reported Inaccurate Information

As to the third element, the standard for inaccuracy under the CCRAA is the same "patently incorrect or materially misleading" standard used to determine inaccuracy under the FCRA. *Carvalho*, 629 F.3d at 890–91. The Court's analysis of Plaintiff's FCRA claim has already concluded that Defendant reported inaccurate information. Necessarily then, the Court also finds that Defendant reported inaccurate information in the context of Plaintiff's FCRA claim.

### 4.    There is a Genuine Dispute of Material Fact as to Whether Plaintiff Was Harmed

As to the fourth element, the Court finds that there is a genuine dispute of material fact as to whether Plaintiff was harmed by Defendant's inaccurate reporting because, as the Court explains below, there is a genuine dispute of material fact as to whether Plaintiff suffered damages.

### 5.    Defendant Should Have Known Its Reporting Was Inaccurate

As to the fifth and final element, the Court finds that Defendant "knew or should have known that the information given to the agency was incomplete or inaccurate[.]" *Reagan*, 2011 WL 2149100, at *3. More precisely, the Court finds that Defendant should have known that simply referring Plaintiff's mortgage to Defendant's foreclosure counsel was not enough to satisfy Section 2924, and thus that Defendant should have known Defendant was reporting inaccurate information.

Defendant has established that Defendant did not know that its internal definition of when the foreclosure process is initiated is not accurate under the FCRA. Defendant's representative testified that "Citi takes foreclosure being started upon the referral to our foreclosure counsel." ECF No. 106-1 at 36, Stringer Dep. at 21:4–5. The closest Plaintiff comes to meaningfully disputing this statement is referencing communications from 2012 in which Defendant asked its foreclosure counsel to file a Notice of Default in Plaintiff's case. ECF Nos. 113-3 to 113-4 (communications with foreclosure counsel about Notice of Default). Yet those communications are quite consistent with Defendant's professed belief that a Notice of Default is not what initiates the foreclosure process because California law requires filing a Notice of Default before a foreclosure sale can occur. In other words, Defendant was always going to have to file a Notice of Default at some point, so communications about filing it are not inconsistent with Defendant's belief that its internal definition of foreclosure initiation is what matters under the FCRA.

Even so, the Court finds that Defendant *should* have known that simply referring Plaintiff's mortgage to Defendant's foreclosure counsel was not enough to satisfy Section 2924 for the same reasons that the Court found Defendant's reporting was inaccurate in the FCRA analysis. In turn, Defendant should have known that its reporting was inaccurate, and this element of Plaintiff's CCRAA claim is satisfied.

### 6.      Neither Party Prevails on the Reasonable Procedures Defense

"[T]he CCRA[A] includes a safe harbor provision: that a 'person who furnishes information to a consumer credit reporting agency is liable for failure to comply with this section, unless the furnisher establishes by a preponderance of the evidence that, at the time of the failure to comply with this section, the furnisher maintained reasonable procedures to comply with those provisions.' " *Noori v. Bank of Am.*, 2016 WL 3124628, at *4 (C.D. Cal. May 26, 2016) (quoting Cal. Civ. Code § 785.25(g)).

Defendant next argues from this that even if Plaintiff has succeeded on her CCRAA claim, Defendant is still entitled to summary judgment because Defendant maintained reasonable procedures to comply with the CCRAA.

25

The Court disagrees. Defendant's evidence in support of this theory is its adherence to the industry standard Metro 2 guidelines, and its written policy stating that its employees are to use "all resources" to complete research necessary to respond to a dispute. At the risk of rehashing the FCRA analysis above, the Court notes that Defendant concedes the Metro 2 guidelines do not actually address this issue, that the "all resources" policy is followed by a list of resources that include just one outside source, and that the testimony of two of Defendants' employees indicated that Defendant's credit dispute investigations do not consult outside sources. The Court does not find this evidence persuasive.

It is also difficult to see how Defendant's procedures are reasonable as a matter of law when Defendant has failed to provide any meaningful evidence about what happened during the investigations that gave rise to this litigation. One of the reasons Plaintiff's motion for summary judgment on her FCRA claims foundered on the reasonable investigation issue is that the record does not indicate what happened during Defendant's investigation. Defendant's position here is thus that it maintains reasonable procedures to comply with the CCRAA, but that those procedures provided no evidence of what happened during the investigations and led Defendant to the erroneous conclusion that its reporting was accurate. Thus, Defendant is not entitled to summary judgment on Defendant's reasonable procedures defense.

### 7. Conclusion

Plaintiff's CCRAA claim succeeds if she proves (1) that Defendant is a "person" under the CCRAA, (2) that Defendant reported information to a CRA, (3) that the information reported was inaccurate, (4) that Plaintiff was harmed, and (5) that Defendant knew or should have known the information was inaccurate. However, Defendant can still prevail if Defendant proves it had reasonable procedures in place.

The Court thus DENIES Plaintiff's and Defendant's motions for summary judgment on Plaintiff's CCRAA claim because there is a genuine dispute of material fact as to whether Plaintiff was harmed and because there is a genuine dispute of material fact as to whether Defendant has reasonable procedures in place.

Case No. 16-CV-04732-LHK
ORDER RE: MOTIONS FOR SUMMARY JUDGMENT

**Defendant is Not Entitled to Summary Judgment on Most Damages Issues**

The final question is whether Plaintiff has any compensable damages. FCRA violations can be negligent or willful. Negligent violations entitle plaintiffs "to actual damages and reasonable costs and fees." *Messano v. Experian Info. Sols., Inc.*, 251 F. Supp. 3d 1309, 1316. "Actual damages may include damages for humiliation, mental distress, and injury to reputation and creditworthiness, even if the plaintiff has suffered no out-of-pocket losses." *Seungtae Kim v. BMW Fin. Servs. NA, LLC*, 142 F. Supp. 3d 935, 944 (C.D. Cal. 2015), *aff'd sub nom. Kim v. BMW Fin. Servs. NA LLC*, 2017 WL 3225710 (9th Cir. July 31, 2017). Willful FCRA violations entitle plaintiffs "to punitive damages, reasonable costs and fees, as well as either actual damages or statutory damages." *Id.* at 1315–16. In a similar vein, negligent CCRAA violations can give rise to actual damages, attorney's fees, and costs, whereas willful violations further permit punitive damages. Cal. Civ. Code § 1785.31(a)(1)–(2); *Testo v. Bank of Am., N.A.*, 2013 WL 7118111, at *4 (C.D. Cal. June 25, 2013).

Plaintiff claims that she was damaged because (1) she was denied financing for an automobile purchase; (2) she lost the ability to refinance an adjustable rate mortgage; (3) she lost the ability to purchase a property around Seattle, Washington; and (4) she suffered emotional distress. Plaintiff also claims (5) that Defendant's violations of the FCRA and CCRAA were willful, and thus that Plaintiff is entitled to punitive damages. Defendant argues that it is entitled to summary judgment on all five of Plaintiff's damages theories. The Court examines each damages theory in turn, and finds that Defendant is entitled to summary judgment only on Plaintiff's automobile financing and loss of ability to purchase a property theories.

Defendant challenges Plaintiff's car financing claim on three grounds. First, Defendant points out that Plaintiff was not actually denied financing—she was just offered financing on less desirable terms. Second, Defendant notes several other credit related factors also affected the financing decision, from which Defendant argues that Plaintiff cannot establish Defendant's inaccurate reporting was the reason for her harm. Third, Defendant contends Plaintiff's damages claim is too speculative because she purchased the car outright instead of through financing.

United States District Court
Northern District of California

Defendant's first argument is unpersuasive because "no case has held that a denial of credit is a prerequisite to recovery under the FCRA." *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir.1995); *Kim*, 142 F. Supp. 3d at 944. In any event, JP Morgan Chase Bank ("Chase"), one of the two lenders contacted to request vehicle financing, denied Plaintiff financing outright. ECF No. 102-3 at 96 (copy of letter denying financing). Defendant's argument that there were multiple reasons for the financing decision also fails. Plaintiff does not need to show that Defendant's reporting was the only cause of Plaintiff's harm, but merely that Defendant's reporting was "a 'substantial factor' in [Plaintiff's] loss of credit rating to create an issue of fact regarding causation." *Fregoso v. Wells Fargo Dealer Servs., Inc.*, 2012 WL 4903291, at *7 (C.D. Cal. Oct. 16, 2012). Here, the only reason given in Chase's letter to Plaintiff denying financing is "FORECLOSURE UNABLE TO VERIFY RESIDENCE." ECF No. 102-3 at 96. That is enough to create a genuine dispute of material fact as to whether Defendant's inaccurate credit reporting was a substantial factor in Plaintiff's unfavorable financing offer.

Nonetheless, Defendant's third argument is persuasive. Plaintiff's damages theory on the car refinancing issue is that Plaintiff "lost interest for money that would have accrued interest had [she] not had to pay for the car out of [her] own pocket instead of financing it." ECF No. 102-3 at 30, Robbins Dep. at 27:9–11. Yet Plaintiff would also be paying interest on the car loan, so her damages theory requires the Court to guess what interest Plaintiff's money might have earned, and compare that to an interest rate on a loan Plaintiff never received. That is speculative. "It is black-letter law that damages which are speculative, remote, imaginary, contingent or merely possible cannot serve as a legal basis for recovery." *Navellier v. Sletten*, 262 F.3d 923, 939 (9th Cir. 2001); *Holland Livestock Ranch v. United States*, 655 F.2d 1002, 1006 (9th Cir. 1981) (noting damages may not be "based on speculation or guess."); *Abel v. United States*, 2000 WL 145396, at *6 (D. Or. Feb. 10, 2000) ("Just as it is too speculative to assume that Abel would have sold the securities, it is also too speculative to assume that the way in which he would have reinvested the money would have created a gain in excess of the [amount] he made."). Defendant is thus entitled to summary judgment on Plaintiff's car financing damages theory.

Defendant next challenges Plaintiff's claim that Defendant's inaccurate reporting caused Plaintiff to lose the ability to refinance an adjustable rate mortgage on a rental property. Plaintiff attempted to refinance her mortgage with her mortgage broker, Brad Ludes. ECF No. 113-1 at 2 Ludes Decl. at ¶ 6. Defendant claims, and Plaintiff does not dispute, that Ludes submitted Plaintiff's loan application to Fannie Mae's DU System for refinancing. Defendant points to the results of Fannie Mae's refinancing review, which found Plaintiff's loan was ineligible for refinancing because the loan-to-value ratio exceeded 65, the loan had received a "Refer with Caution" recommendation, Defendant reported a foreclosure, and NuVision reported "a preforeclosure sale." ECF No. 102-3 at 99 (copy of Fannie Mae's preliminary review).

At the outset, the "Refer with Caution" notation expressly says it can be "manually overwritten," and the NuVision short sale does not categorically prohibit Plaintiff from receiving a refinance. *See id.* at 99–100 (noting that loan may be eligible for refinance if a short sale was completed two or more years prior to the refinance and meets the requirements for extenuating circumstances). There are thus only two categorical reasons that Plaintiff's refinance was denied: the loan-to-value ratio exceeded 65, and Defendant reported a foreclosure. Defendant argues that this means Defendant's inaccurate reporting could not have been a substantial factor in Plaintiff's inability to refinance because Plaintiff's high loan-to-value ratio independently barred refinancing. *See Davenport v. Sallie Mae, Inc.*, 124 F. Supp. 3d 574, 582 (D. Md. 2015) (granting summary judgment where "the evidence does not support [plaintiff's] claim that his loss of available credit was caused by Navient's FCRA violation").

Plaintiff responds by highlighting Ludes' declaration and the report of Plaintiff's economics expert Roman Garagulagian. ECF No. 113-1, Ludes Decl.; ECF No. 113-11, Expert Report of Roman Garagulagian ("Garagulagian Report"). Garagulagian's report is not helpful to Plaintiff because it only calculates "economic losses" allegedly due to the denial of credit or its extension on less favorable terms—Garagulagian is an economist who nowhere purports to address Plaintiff's loan refinance eligibility. ECF No. 113-11, Garagulagian Report. The Ludes declaration is a different matter, however, because Ludes has been "a mortgage banker for

29

approximately twenty-five years" and states under penalty of perjury that "[h]ad [Defendant] not reported any mention of a foreclosure, I would have been able to proceed with [Plaintiff's] refinance." ECF No. 113-1 at 3, Ludes Decl. at ¶ 12. The Court is thus faced with evidence on both sides, and concludes there is a genuine dispute of material fact as to whether Defendant's inaccurate reporting damaged Plaintiff.

Defendant is more persuasive in arguing that Plaintiff's loss of ability to purchase a property near Seattle is too speculative a basis for damages. As Defendant points out, not only did Plaintiff never apply for a mortgage, but Plaintiff never even identified a particular property that she was interested in buying. ECF No. 106-1 at 23–24, Robbins Dep. at 87:24–88:1, 88:23–25. This requires speculation about the property Plaintiff might have bought, the loan terms she might have received, what other offers might have been made on the property, and what level of appreciation the hypothetical property might have experienced after she purchased it. Lost opportunity damages this speculative fail to survive summary judgment. *Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 475 (2d Cir. 1995) (FCRA case grant of summary judgment for defendants where plaintiff's damages stemming "lost opportunity" to purchase a home in San Diego "were too speculative."); *see Navellier*, 262 F.3d at 939 (noting speculative damages unrecoverable); *Holland Livestock*, 655 F.2d at 1006 (same).

Defendant's claim that Plaintiff's emotional distress damages are too speculative is less successful. "To survive summary judgment on an emotional distress claim under the FCRA, Plaintiff must submit evidence that reasonably and sufficiently explains the circumstances of his injury and does not resort to mere conclusory statements." *Taylor v. First Advantage Background Servs. Corp.*, 207 F. Supp. 3d 1095, 1102 (N.D. Cal. 2016). During Plaintiff's deposition she repeatedly stated that she has spent "over 500 hours" attempting to resolve Defendant's inaccurate credit reporting, that this had caused her emotional stress, and that she has several times sought medical attention as a result. ECF No. 113-12 at 5–6, Robbins Dep. at 113:11–22, 114:8–25. When Plaintiff was asked to define what Plaintiff meant by "stressed," Plaintiff replied that sources of her stress included "excessive hours of having to deal with [Defendant's inaccurate

United States District Court
Northern District of California

reporting]; the refusal of [Defendant] to correct their mistake … [and] los[ing] my home." ECF No. 113-12 at 6, Robbins Dep. at 114:19–25. The Court thus rejects Defendant's argument because Plaintiff has supplied "evidence of emotional distress experienced as a result of the misreporting … ." *Drew*, 690 F.3d at 1109.

Defendant next argues that it is entitled to summary judgment that its inaccurate reporting was not willful, which would preclude punitive damages. *Messano*, 251 F. Supp. 3d at 1315–16. The undisputed statement by Defendant's designated representative that Defendant "takes foreclosure being started upon the referral to our foreclosure counsel" means that Defendant cannot knowingly have violated the FCRA. ECF No. 106-1 at 36, Stringer Dep. at 21:4–5. Nevertheless, willfulness under the FCRA "cover[s] not only known violations of [the statute], but reckless ones as well." *Safeco*, 551 U.S. at 57. Defendant has not provided any case that supports its position that the foreclosure process is initiated when a lender refers a mortgage to its foreclosure counsel. By contrast, Plaintiff has provided a string of cases stating that California law holds that filing a Notice of Default initiates the foreclosure process. Thus while Defendant's mistake may well fall below the willful standard, the Court finds that there is a material factual dispute as to the willfulness of Defendant's behavior.

In sum, there is no material factual dispute as to whether Plaintiff was damaged by the denial of financing for an automobile purchase or whether Plaintiff was damaged by a lost ability to purchase a property around Seattle, Washington. However, there is a genuine dispute of material fact as to whether Plaintiff was damaged by a lost ability to refinance her property, whether Plaintiff suffered emotional distress, and whether Defendant's violations of the FCRA and CCRAA were willful.

## V.    CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's motion for summary judgment and GRANTS in part and DENIES in part Defendant's motion for summary judgment..

**IT IS SO ORDERED.**

Case No. 16-CV-04732-LHK
ORDER RE: MOTIONS FOR SUMMARY JUDGMENT

Dated: December 20, 2017

_Lucy H. Koh_

LUCY H. KOH
United States District Judge

United States District Court
Northern District of California